UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIANA MICHELE JAKOBSEN,

                   Plaintiff,

      v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                  Defendant.

Case No. C17-0398 RSL

ORDER REVERSING AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS

Plaintiff Mariana Michele Jakobsen appeals the decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for Supplemental

Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. For the

reasons set forth below, the Commissioner's decision is REVERSED and REMANDED.

## I.       FACTS AND PROCEDURAL HISTORY

Plaintiff is a 51-year-old woman with a tenth-grade education. Administrative Record

("AR") at 408. Her past work experience was as a sorter/pricer, sales clerk, manager of a retail

store, child care monitor, and livestock rancher. AR 216, 96.

Plaintiff filed an application for supplemental security income on May 22, 2012, alleging

disability as of July 1, 2011. AR 206. She asserted that she was disabled due to a combination of

physical and mental impairments, including lumbar spine impairment, bursitis in the hip and

knee, carpal tunnel syndrome, fibromyalgia, chronic migraines, bipolar II disorder, depression, anxiety, and panic attacks. AR 172, 379-81, 407.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR 171, 186. Plaintiff requested a hearing, which took place on June 25, 2013. AR 47-102. On July 26, 2013, Administrative Law Judge ("ALJ") Glenn Meyers issued a decision finding that the plaintiff was not disabled because she could perform specific jobs existing in significant numbers in the national economy. AR 203-218.

Plaintiff filed a request for review with the Appeals Council. The Appeals Council issued an order vacating the ALJ's decision and remanding the case for further proceedings. AR 224-27. In substance, the Appeals Council directed the ALJ to (a) give further consideration to plaintiff's diagnoses of bipolar disorder II, panic disorder with agoraphobia, and somatic dysfunction disorder, (b) further evaluate the opinion of Ellen Walker, Ph.D., that the plaintiff's diagnoses include undifferentiated somatoform disorder, major depressive disorder, recurrent severe panic disorder with agoraphobia, and (c) address a discrepancy between the ALJ's findings regarding residual functional capacity and the vocational evidence presented during the hearing. AR 225-26.

ALJ Meyers held a second hearing, AR 103-170, and issued an unfavorable decision on June 23, 2015, AR 27-40. The Appeals Council denied plaintiff's request for review, AR 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. Id.

## III.    EVALUATING DISABILITY

The claimant, Ms. Jakobsen, bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. <u>Id.</u> If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d) ("the Listings"). A claimant whose impairment meets or equals one of the Listings for the required twelve-month duration is disabled. <u>Id.</u>

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the

claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); Tackett, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## IV. DECISION BELOW

On June 23, 2015, ALJ Meyers issued a decision finding, in relevant part, the following:

1. The claimant has not engaged in substantial gainful activity since May 22, 2012, the application date (20 C.F.R. § 416.971 et seq.).

2. The claimant has the following severe impairments: fibromyalgia; migraines; depressive disorder; somatoform disorder; anxiety disorder; panic disorder; personality disorder (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) including the following limitations. She can perform unskilled, repetitive, routine work. She cannot have contact with the public. She is capable of working in proximity to but not in coordination with co-workers. She can have occasional contact with supervisors. She will be off-task at work up to 10% of the time, but still meet the minimum production requirements of the job. She will be absent from work one time per month.

5. The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965).

6. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 416.969 and § 416.969(a)).

7. The claimant has not been under a disability, as defined in the Social Security Act, since May 22, 2012, the date the application was filed. (20 C.F.R. § 416.920(g)).

AR 30-40.

1

## V.      ISSUES ON APPEAL

2      The issues on appeal are:

3      A.      Whether the ALJ failed to properly evaluate all of the plaintiff's severe mental
               impairments at steps two and three of the disability evaluation.

4

5      B.      Whether the ALJ failed to properly weigh and credit the medical opinion
               evidence.

6      C.      Whether the ALJ's step five finding is supported by substantial, competent
               evidence.

7

Dkt. 10 at 1.

8

## VI.      DISCUSSION

9

A.      <u>Evaluation of Plaintiff's Severe Mental Impairments at Steps Two and Three</u>

10

       Plaintiff argues that the ALJ failed to properly evaluate all of her severe mental

11

impairments at step two and failed at step three to properly consider whether plaintiff's severe

12

impairments, alone or in combination, meet or equal one of the Listings. Specifically, plaintiff

13

argues that the ALJ erred at steps two and three in failing to reconsider or reevaluate plaintiff's

14

diagnosed bipolar II disorder, which the Appeals Council listed among the diagnoses the ALJ

15

failed to address in the original decision. <u>See</u> AR 225. Plaintiff argues further that the ALJ erred

16

at step three by failing to incorporate plaintiff's somatoform disorder in the determination of

17

whether her mental impairments, alone or in combination, meet or equal a Listing. Dkt. 10 at 5-

18

9. These errors, plaintiff asserts, adversely affected the ALJ's assessment of the plaintiff's

19

credibility and her residual functional capacity.

20

       At step two, the ALJ determines whether the claimant has a medically severe impairment

21

or combination of impairments. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140–41 (1987). This inquiry is

22

a threshold determination meant to screen out weak claims. <u>Id</u> at 145-47. An impairment or

23

combination of impairments is "not severe" and therefore not disabling if the medical evidence establishes only a slight abnormality "which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28.

At step three, the ALJ determines whether the claimant's impairments meet or equal one of the Listings. See 20 C.F.R. Part 404, Subpt. P, App. 1. To meet the requirements of a Listing, a claimant must establish that she has a medically determinable impairment that satisfies all of the criteria in the specific Listing. 20 C.F.R. § 1525. An impairment equals a Listing if it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 1526. If a claimant has more than one impairment, none of which individually meets or equals a Listing, the ALJ must evaluate the combined effects of all the claimant's impairments to determine whether they meet or equal the characteristics of any relevant listed impairment. Marcia v. Sullivan, 900 F.3d 172, 176 (9th Cir. 1990).

In his initial decision, the ALJ found that the plaintiff had severe impairments of depression, anxiety, headaches, and fibromyalgia, but that her impairments, alone and in combination, did not meet or equal one of the Listings. AR 208. The Appeals Council vacated that decision and remanded, in part because the ALJ's decision did not discuss or make any explicit findings about the severity of three diagnoses revealed in the medical record: bipolar II disorder, NOS, panic disorder with agoraphobia, and somatic dysfunction disorder. AR 225. These psychological conditions were diagnosed by plaintiff's treating providers and are addressed in her medical records. AR 659-673, 692-720, 755-759. The Appeals Council explained that "[i]f these are severe impairments, they could affect subsequent findings of the sequential evaluation process" and directed the ALJ to obtain additional evidence and consider the alleged impairments further. AR 225-26.

Following the second hearing, the ALJ found the plaintiff had severe impairments of fibromyalgia, migraines, depressive disorder, somatoform disorder, anxiety disorder, panic disorder, and personality disorder. AR 33. The ALJ also found the plaintiff had non-severe conditions of obesity and probable mild carpal tunnel syndrome. Id. As with his first decision however, the ALJ did not address plaintiff's diagnosis of bipolar II disorder. It is not included among the severe impairments the ALJ found at step two, nor is it addressed in the step three analysis of whether plaintiff's impairments, alone or in combination, meet or equal a Listing. Similarly, although the ALJ identified somatoform disorder as one of plaintiff's severe impairments, the disorder is not mentioned in any later step of the sequential analysis. Furthermore, the ALJ did not determine whether plaintiff's impairments, alone or combined, meet or equal Listing 12.07, which applies specifically to somatic symptom and related disorders.

The failure to evaluate the plaintiff's diagnoses of bipolar II disorder and somatoform disorder was error. The ALJ may not ignore medical evidence of a claimant's impairments without providing specific, legitimate reasons for doing so. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996); see also Cotton v. Bowen, 799 F.2d 1403, 1408-09 (9th Cir. 1986) (holding that an ALJ must provide specific, legitimate reasons for disregarding a treating physician's medical opinion, even if the evidence is controverted). There is no dispute that both bipolar II and somatoform disorder were diagnosed by plaintiff's treating physicians. The ALJ's decision provides no reasons for not including bipolar II among plaintiff's severe impairments, so it cannot be said that the ALJ's reasons for disregarding the diagnosis were specific or legitimate. Further, the failure to specifically address both bipolar and somatoform disorder in later stages of the sequential evaluation leaves the Court with a void where there should be specific findings

and reasoning. "Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Commissioner, 554 F.3d 1219, 1225 (9th Cir. 2009); see also, Pinto v. Massanari, 249 F.3d 840, 847-848 (9th Cir. 2001) (holding the Commissioner's decision cannot be upheld on a ground the Commissioner did not invoke in making the decision).

The Commissioner argues that the ALJ's error in failing to address plaintiff's bipolar II disorder was harmless. An error is harmless if it is non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006). The party claiming error bears the burden of demonstrating that the error affected her "substantial rights," which is to say, not merely her procedural rights. Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). The Commissioner argues that the ALJ's failure to mention the bipolar II diagnosis was harmless because the ALJ considered all of the plaintiff's limitations flowing from her "many psychological conditions" when he evaluated plaintiff's limitations in the four broad areas of functioning identified in 20 C.F.R. § 419.920a(c). Dkt. 11 at 3.

The Commissioner cites Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005), in support of her harmless error argument. In that case, the court rejected plaintiff's argument that failure to consider her obesity at step two required reversal. Assuming without deciding whether the ALJ had erred, the court explained that "it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor." Id. at 682. Burch is inapposite, because although the ALJ in that case did not identify obesity as a severe impairment at step two, he did specifically factor plaintiff's

obesity into the RFC determination, noting the evidence of her weight gain over a period of time and recognizing that her obesity likely contributed to her back pain. 400 F.3d at 684.

Here, the ALJ has not given any explanation of whether, or how, he determined plaintiff's bipolar II diagnosis was not a severe impairment, nor whether or how the plaintiff's bipolar II and somatoform disorders factored into her functional limitations. This case is thus more akin to Smolen, where the court concluded that because the ALJ found the plaintiff had only one severe impairment, not the combination of impairments shown by the evidence, he "necessarily failed to consider at step five how the combination of her other impairments—and resulting incapacitating fatigue—affected her residual functional capacity to perform work." 80 F.3d at 1290. The Court cannot conclude that the ALJ adequately considered whether and how the plaintiff's bipolar II and somatoform disorders affected her functioning because the ALJ has not explained the omission of the disorders from his evaluation of her impairments.

B.  Evaluation of Medical Opinions

Plaintiff argues that the ALJ failed to properly weigh the medical opinions of health care providers who examined and treated her, including Dr. Ellen Walker, Dr. Kevin Ma, Dr. Deborah Oksenberg, Dr. James Prickett, Dr. Lora Sherman, and Dana Huntoon, MA, LMHC.

In general, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician. Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014); 20 C.F.R. § 404.1527(c). If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it is given controlling weight. Ghanim, 763 F.3d at 1160; 20 C.F.R. § 404.1527(c)(2). An ALJ may reject the uncontradicted medical opinion of a

treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); Ghanim, 763 F.3d at 1160-61.

"Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it." Ghanim, 763 F.3d at 1161. The ALJ is required to consider the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion. Id. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (quoting SSR 96-2p at 4). Nor may an ALJ "simply reject a treating physician's opinions on the ultimate issue of disability." Holohan, 246 F.3d at 1202-03 (9th Cir. 2001). An ALJ may reject a treating physician's contradicted opinions only by providing "specific and legitimate reasons that are supported by substantial evidence." Ghanim, 763 F.3d at 1161 (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)).

### 1. Dr. Walker

Plaintiff argues that the ALJ improperly weighed the opinion of Dr. Walker, who conducted a psychological evaluation of the plaintiff in June of 2013 and provided both a narrative report of her evaluation, AR 756-59, and a functional limitations assessment, AR 761-766. In his initial decision, ALJ Meyers stated that he gave some weight to Dr. Walker's opinions regarding plaintiff's poor concentration and memory, as well as her problems interacting with others, and that his RFC assessment accordingly reflected limitations in those areas. AR 216. The ALJ gave little weight to Dr. Walker's opinion that plaintiff is disabled, however, because "her concentration and memory at appointments were generally found to be intact," and because Dr. Walker's testing suggested symptom exaggeration, which, according to

the ALJ, Dr. Walker had failed to address in her recommendation. Id. When the Appeals Council vacated and remanded the ALJ's decision, it directed him to further evaluate Dr. Walker's opinions (including her conclusion that the plaintiff perceived her symptoms as quite pronounced and was not exaggerating) and her diagnoses of undifferentiated somatoform disorder, major depression, recurrent severe, and panic disorder with agoraphobia. AR 225. The Appeals Council directed the ALJ to further consider Dr. Walker's opinions pursuant to 20 C.F.R. § 416.927 and SSRs 96-2p and 96-5p, and to explain the weight given to the evidence.

In his decision following remand, ALJ Meyers gave partial weight to Dr. Walker's opinion that the plaintiff has severe mental health impairments. He gave little weight to the other aspects of Dr. Walker's opinion, however, because he found they were contradicted by evidence in the record. AR 38. Plaintiff argues that the ALJ's reasons for rejecting Dr. Walker's opinions are not specific and legitimate or supported by substantial evidence. The Court agrees.

The ALJ gave little weight to Dr. Walker's opinions that the claimant's GAF score was 43 and that she lacks the ability to do basic life management, AR 759, on the grounds that the plaintiff cares for her eleven-year-old son, is involved with volunteering at her church and on a horse farm, and performs a range of other daily activities. AR 38. The ALJ's findings, however, are not supported by substantial evidence and do not show the claimant has an ability to do basic life management, let alone to work. The Ninth Circuit has explained that where a claimant is "able to spend a substantial part of the day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," the ALJ may conclude that the claimant's impairments are not disabling. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Burch, 400 F.3d at 681 (in determining whether pain prevented the claimant from working, the ALJ was entitled to consider claimant's abilities to care for her own personal needs, cook,

clean, shop, interact with her nephew and boyfriend, and manage her own and her nephew's finances). However, a claimant need not be "utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." <u>Fair</u>, 885 F.2d at 603 (internal citations omitted); <u>see also</u> <u>Ghanim</u>, 763 F.3d at 1165 (claimant's activities including basic chores, sometimes with the help of a friend, and attending social events were not demonstrated to be transferrable to a work setting or to comprise a substantial portion of her day).

The record is not sufficiently developed to support the conclusion that the claimant's volunteer work is evidence of her ability to manage her life or to work. As to the claimant's volunteering at her church, there is only a single mention of it in the record: a therapy progress note from July 2013 stating that the claimant "reports volunteering at the Church, helping the pastor's wife." AR 834. According to the chart note, the claimant had just joined the church. Subsequent references to the church relate to the community helping her move or providing unspecified support or to the claimant attending church when she had the energy. There are no other references to the claimant volunteering for her church. <u>See, e.g.</u>, 757-78, 791, 833. Similarly, there is only one reference in the record to the claimant reporting that she was "starting to volunteer on the 'animals as therapy' farm." AR 820. In neither case is there any evidence of the activities the plaintiff performed while volunteering, how frequently she volunteered, the duration of any volunteering sessions, or the transferability of the claimant's volunteer activities to the workplace.

Nor does the record support the conclusion that the claimant's activities in caring for her son show she engages in activities that are transferrable to the workplace. Rather, the claimant's

testimony and the medical records paint a consistent picture of someone whose daily activities appear to be "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." <u>Orn</u>, 495 F.3d at 639. The ALJ cites treatment records from August and November 2013 reporting, respectively, that the claimant was "working hard to offer [her] son opportunities for growth, friendship and connections with other kids and adults," and "making sure he gets to school and is well care [sic] for even when she is not doing well." AR 37. However, at the November 2013 appointment, the claimant also reported having multiple migraines over the prior two weeks, feeling depressed, and at one point staying in bed for 36 hours. AR 826. At the appointment in August, the claimant described a scholarship her son received to attend an "animal camp" because the claimant's <u>mother</u> wrote to request it. AR 833. These records say nothing about what activities the claimant performed to care for her son, and, read in context, suggest the need for support and assistance to provide for her son.

Furthermore, nothing in these or other treatment records or in the claimant's testimony describe activities the claimant performed in caring for her son beyond some very basic childcare activities the claimant performed, frequently with the assistance of her mother. <u>See, e.g.</u>, 80, 151, 152, 155, 869. Until the summer of 2013, the claimant and her son lived three blocks from his school, and the claimant helped her son get to and from school. AR 91. The claimant testified that when her fibromyalgia pain was bad, however, she could not walk the three blocks, and she drove her son to school instead. AR 92. Other times, due to pain from fibromyalgia or migraines, the claimant relied on a neighbor to walk her son to school. <u>Id.</u> She further testified that by September 2014, when the claimant and her son lived farther away from his school, most of her driving each week consisted of taking her son to and from school. AR 91, 144-45, 150. After driving her son to school, she often returned to bed. <u>See, e.g.</u>, AR 550, 587, 606, 650. The

claimant tried to attend her son's soccer games, but when she had migraines, her mother went instead. AR 140. The claimant was not generally able to take her son to soccer practice, nor was she able to assist him with having or attending after-game parties. Id. The claimant also testified that she is unable to help out in her son's classroom, which other parents do, or to help him with homework. Id. When her son needed help with a special project, she said she "just couldn't make it happen." AR 139.

Second, the ALJ gave little weight to Dr. Walker's assessment that the plaintiff's memory is poor, because mental status examinations in follow-up appointments with plaintiff's providers showed that her "thought processes and cognitive functioning are both normal," AR 38. In support of this finding, the ALJ cited physical examination findings made by an Advanced Registered Nurse Practitioner (ARNP) during a follow-up appointment in December 2014. AR 874-75. The chart note concerning claimant's memory and cognition appear in a routine review of systems, and nothing in the record suggests that the ARNP's findings were the result of any specific tests of memory or cognition. The ALJ did not provide any reasons why a snapshot observation, based on an unspecified assessment by an ARNP, should be given greater weight than the specific testing performed by Dr. Walker during a complete psychological examination. See Holohan, 246 F.3d at 1207-08 (ALJ may not selectively rely on some records and ignore others showing greater impairment); Regennitter v. Comm'r Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999) (error under either "clear and convincing" or "specific and legitimate reasons" standards to reject an examining psychologist's report on the grounds that it contradicted a less extensive report).

Third, the ALJ gave little or no weight to Dr. Walker's opinions that the plaintiff "tends to isolate" and "is anxious when she must interact with others," because the plaintiff was able to

travel to Denmark with her son in May 2015, proving that she can overcome her impairments. AR 38. Here again, the ALJ has selectively focused on a single activity, while ignoring extensive testimony and treatment records showing the claimant's severe social anxiety. See Holohan, 246 F.3d at 1207-08; Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (claim of pain-induced disability not gainsaid by capacity to engage in periodic restricted travel). The claimant testified that, because she has traveled between Denmark, her birthplace, and the United States so many times, the trip is not too difficult for her if she takes medication. AR 142. This is in contrast, however, to the very many situations documented in the record where the claimant has been unable to cope, such as when she was expected to open and run her consignment store, AR 72-73, 93-94, 571, 587, 597, 608, interact with customers, AR 93, or attend social engagements, AR 146. In addition, the claimant testified to measures that reduced her anxiety on the trip to Denmark, such as being driven to and from the airport in Vancouver, B.C., relying on her son to keep track of the gates and times of flights, and staying in her room while her son went on day trips with his father. AR 141-42, 46.

Fourth, the ALJ gave little or no weight to Dr. Walker's opinion that the plaintiff would have difficulty with coworker and supervisor interactions and would likely develop physical symptoms when under work-related stress, because the plaintiff attempted to operate her own consignment store in 2013, which "demonstrates that she retains the mental RFC to perform at least unskilled, repetitive, routine work involving limited social interaction." AR 38. This finding is roundly contradicted by the record as a whole, which demonstrates that the claimant failed in each of her attempts to operate her consignment store due to her severe depression, anxiety, pain and fatigue from fibromyalgia, and chronic debilitating migraines. See, e.g., AR 72-73, 93-94, 571, 587, 597, 608. As the Ninth Circuit has explained "[i]t does not follow from the fact that a

claimant tried to work for a short period of time and, because of his impairments, failed, that he did not then experience pain and limitations severe enough to preclude him from maintaining substantial gainful employment. Indeed, we have suggested that similar evidence that a claimant tried to work and failed actually supported his allegations of disabling pain." Lingenfelter v. Astrue, 504 F.3d 1028, 1038-39 (9th Cir. 2007). See also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Nor does the claimant's lack of success in operating a retail business support a finding that she retains some other functional capacities, even less skilled ones.

The ALJ's reasons for discrediting Dr. Walker's opinion are not specific and legitimate and they are not supported by substantial evidence in the record.

2.    Dr. Ma

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for his apparent rejection of the opinion of Dr. Ma, a physician who treated the plaintiff for migraines and who provided an RFC assessment. See AR 751-54. Dr. Ma found that the plaintiff had "some form of headache" about three-fourths of the month," which he said was about four to seven separate migraine attacks. AR 751. He further said that these headaches ranged from four hours to four days. Id. Dr. Ma stated that the plaintiff would need to take unscheduled breaks to lie down during an eight-hour workday on a variable basis, depending on the severity of the headaches, and that she "quite likely" would need to go home. AR 753. He concluded that the plaintiff would have difficulty tolerating even low stress jobs and would miss work more than four times a month. AR 753.

1    It appears ALJ Meyers gave Dr. Ma's opinion either little or no weight. In his original

2    decision, the ALJ noted that (a) treatment notes showed the plaintiff's physical and neurological

3    examinations were generally normal, (b) the plaintiff's brain MRI was normal, and (c) the

4    infrequency of plaintiff's emergency room visits was not consistent with the frequency of her

5    reported severe migraines. AR 215. The ALJ opined that if the plaintiff had migraines with the

6    frequency reported by Dr. Ma, she would have gone to the ER more than twice during the

7    relevant time period. Id. The ALJ also noted that psychological testing that was "consistent with

8    symptom exaggeration" might explain Dr. Ma's opinion, because it appeared to the ALJ that Dr.

9    Ma relied heavily on the claimant's subjective reports. AR 215-16.

10          In his decision following remand, the ALJ incorporated his initial analysis of Dr. Ma's

11   opinion by reference, and supplemented it with the additional finding that the severity of the

12   plaintiff's headaches fluctuate with the seasons and are milder in the summertime. AR 37 (citing

13   Ex. 21F, AR 858).

14          The ALJ's reasons for rejecting Dr. Ma's opinions regarding the frequency and severity

15   of plaintiff's migraines are specific, but they are not legitimate because they are not supported by

16   any evidence in the record. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ

17   not qualified to make his own assessment of the claimant's condition). There is no evidence to

18   support the ALJ's apparent assumption that normal physical and neurological examinations and

19   normal MRI results are inconsistent with a diagnosis of migraine and/or indicate lesser frequency

20   or severity than Dr. Ma found. That the plaintiff's migraines are less severe during the summer

21   does no invalidate Dr. Ma's opinion: the evidence is undisputed that in all seasons, the plaintiff

22   experiences several debilitating migraines every month. During the one summer that the plaintiff

23

noticed her migraines were "better," she still had five "bad ones," with pain at a level nine on a scale of one to ten that did not improve with medication. AR 858.

Nor is there any evidence to support the ALJ's supposition that the plaintiff would go to the ER more often if she truly had migraines as frequently as she reports. The medical evidence shows that the plaintiff has tried essentially every migraine treatment available, with limited success. See, e.g., AR 858, 861, 868, 871. When she has a migraine, she retreats to a "dark room." AR 858. She testified in 2015 that there is only one medication that helps reduce her headache pain during a migraine, although it does not always work. AR 157-158-59. According to her neurologist, there is not much in the way of medicinal options left for the plaintiff, AR 864, so it is not clear why the ALJ would expect her to make more frequent visits to the ER during severe migraine attacks.

The ALJ's finding that tests showing "symptom exaggeration" undermine Dr. Ma's opinion is similarly unsupported by substantial evidence. The psychological tests were performed by Dr. Walker and, contrary to the ALJ's characterization of the results, Dr. Walker did not conclude that the tests showed the claimant was exaggerating her symptoms. Rather, Dr. Walker concluded that the claimant "perceives her symptoms as quite pronounced and that she does not view her description of them as exaggerated. This client is overwhelmed by anxiety, tension, and depression, and she appears to be chronically psychologically maladjusted." AR 758. Neither of the ALJ's decisions offer a reason for ignoring Dr. Walker's assessment of psychological tests she administered, nor for the ALJ's substitution of his own understanding of Dr. Walker's test results as a basis for evaluating the opinions of claimant's other treating physicians. Dr. Walker's test results do not provide a legitimate basis for discounting Dr. Ma's opinion. See Day, 522 F.2d at 1156; Jahnsen v. Berryhill, 265 F. Supp.3d 992, 1001-02 (D.

Alaska 2017) (holding ALJ improperly substituted her lay opinion for that of a professional when she rejected a medical opinion due to underlying invalid test results, despite the doctor's explanation of why the test results were consistent with his diagnosis and evaluation of the claimant).

3.    Dr. Oksenberg

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for giving little weight to the opinion of Dr. Oksenberg, one of claimant's treating physicians. In Dr. Oksenberg's opinion, the claimant's fibromyalgia, migraines, and depression limited her to part-time, sedentary work. AR 656. The ALJ discounted Dr. Oksenberg's assessment in his initial decision because it was inconsistent with certain treatment notes, AR 215, and he incorporated that decision by reference in his 2015 decision. AR 38. The treatment notes on which the ALJ relied, however, relate only to claimant's fibromyalgia; the ALJ did not consider Dr. Oksenberg's opinion that the claimant's limitations were based on the combination of claimant's migraines, depression, and fibromyalgia. If an ALJ chooses to disregard a treating physician's opinion, he must set forth specific, legitimate reasons for doing so. Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); Smolen, 80 F.3d at 1283 (ALJ may not simply ignore medical evidence of impairments diagnosed by treating physicians). The Court agrees that the ALJ's reasons for discounting the opinion of Dr. Oksenberg are not specific and legitimate or supported by substantial evidence.

4.    Dr. Prickett, Dr. Sherman, and Ms. Huntoon

Plaintiff argues that the ALJ failed to adequately address the opinions of three others who treated her. The ALJ discounted the opinion of claimant's therapist, Dana Huntoon, MA, MHP, because he found it to be inconsistent with her own treatment notes. Because Ms. Huntoon is an

"other source," the ALJ need only provide germane reasons for discounting her opinion. <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1223-24 (9th Cir. 2010). The ALJ's reasons were sufficient.

The ALJ did not directly address others among the claimant's treating physicians, such as Dr. Prickett and Dr. Sherman. In determining whether a claimant is disabled, the ALJ is required to develop the record and interpret the medical evidence. <u>See</u> <u>Crane v. Shalala</u>, 76 F.3d 251, 255 (9th Cir. 1996). The ALJ is further required to consider the combined effect of all the claimant's impairments, without regard to whether any impairment, if considered separately, would be sufficiently severe to render the claimant disabled. 20 C.F.R. § 416.923. The ALJ is not required, however, to discuss every piece of evidence. <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003). Here, the Court finds that, other than as set forth above, the ALJ has adequately developed the record and discussed the medical evidence.

5.     <u>Conclusion</u>

As detailed above, the ALJ did not provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting or discounting the opinions of Dr. Walker, Dr. Ma, and Dr. Oksenberg. These errors cannot be deemed inconsequential to the ultimate determination of nondisability, and are therefore not harmless. <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012).

C.     <u>Evidence Supporting the Step Five Finding</u>

Plaintiff argues that the ALJ's RFC assessment is not supported by the record and that the hypothetical propounded to the vocational expert was incomplete and did not accurately reflect the claimant's limitations. Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. <u>Embry</u>, 849 F.2d at 422. If the

assumptions in the hypothetical are not supported by the record, the vocational expert's opinion

that the claimant has the ability to work is of no evidentiary value. Id. (citing Gallant v. Heckler,

753 F.2d 1450, 1456 (9th Cir. 1984)). Because the ALJ erred in assessing medical evidence, his

RFC assessment may not completely and accurately describe the claimant's capabilities.

Similarly, the hypothetical questions posed to the vocational expert may not have completely and

accurately described all of the claimant's capabilities. Therefore, the ALJ's step five

determination will be remanded for further consideration along with the medical evidence.

D.      Scope of Remand

        The Court may remand this case "either for additional evidence and findings or to award

benefits." Smolen, 80 F.3d at 1292. Ordinarily, when an ALJ erroneously denies benefits, the

court must remand to the agency for further proceedings before directing an award of benefits.

Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). Remanding for

further proceedings is unnecessary, however, if the record is fully developed and it is clear from

the record that the agency would be required to award benefits. Holohan, 246 F.3d at 1210.

Specifically, benefits should be awarded where:

        (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
        claimant's] evidence, (2) there are no outstanding issues that must be resolved
        before a determination of disability can be made, and (3) it is clear from the
        record that the ALJ would be required to find the claimant disabled were such
        evidence credited.

Smolen, 80 F.3d 1273 at 1292. The direct award of benefits under this rule "was intended as a

rare and prophylactic exception to the ordinary remand rule when there is no question that a

finding of disability would be required if claimant's testimony were accepted as true." Leon v.

Berryhill, 803 F.3d 1041, 1045 (9th Cir. 2018).

Here, issues still remain regarding conflicts in the evidence about plaintiff's functional capabilities and her ability to perform other jobs existing in significant numbers in the national economy despite any additional limitations. Accordingly, remand for further consideration is warranted in this matter. On rehearing, the ALJ should also consider obtaining a further psychological evaluation of the claimant, as recommended by Dr. Rubin at the 2015 hearing, and should reevaluate both the medical opinion evidence and the claimant's testimony in light of Dr. Walker's conclusion (which was consistent with the view of claimant's treating physicians) that the claimant "perceives her symptoms as quite pronounced" and "does not view her description of them as exaggerated." AR 758.

### VII.    CONCLUSION

For the foregoing reasons, the Court finds that the ALJ erred in evaluating the plaintiff's diagnoses and in evaluating medical opinion evidence in the record. The decision of the Commissioner is **REVERSED** and this matters is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 27th day of February, 2018.

ROBERT S. LASNIK
United States District Judge